IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

SAMUEL L. REED,

                Petitioner,

v.

SAM CLINE et al.,

                Respondents.

Case No. 16-3208-DDC

## MEMORANDUM AND ORDER

This matter comes before the court on petitioner Samuel L. Reed's petition for writ of habeus corpus (Doc. 1), the State's Answer and Return (Doc. 11), and petitioner's Traverse and Supplement to Traverse (Docs. 20, 21). Petitioner attacks his state court conviction and raises four claims for relief. First, petitioner asserts the trial judge violated his right to a public trial. Then petitioner asserts that his trial counsel, Quentin Pittman, failed to object three separate times at trial, and that each failure supplies a basis to claim ineffective assistance of counsel under the Sixth Amendment. Doc. 1. at 4–9. For reasons explained below, the court denies the petition.

    **I.**    **Federal Habeas Standards**

A federal court reviews a state prisoner's challenge to matters decided in state court proceedings according to the Antiterrorism and Effective Death Penalty Act ("AEDPA"), which "requires federal courts to give significant deference to state court decisions" on the merits. *Lockett v. Trammel*, 711 F.3d 1218, 1230 (10th Cir. 2013). Under 28 U.S.C. § 2254, a federal court should not grant a state prisoner habeas relief for "any claim that was adjudicated on the merits in State court proceedings" unless the prisoner can show one of the following: (1) that the

adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States;" or (2) that the adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)–(2). "Clearly established Federal law" refers to the Supreme Court's holdings, but not dicta. *Lockett*, 711 F.3d at 1231. The adjudication is "'contrary to' a clearly established law if it 'applies a rule different from the governing law set forth in [Supreme Court] cases, or if it decides a case differently than [the Supreme Court has] done on a set of materially indistinguishable facts.'" *Id.* (quoting *Bell v. Cone*, 535 U.S. 685, 694 (2002)). A factual determination "made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). The petitioner has the burden of rebutting this presumption of correctness by clear and convincing evidence. *Id.*

But the court applies a different standard to ineffective assistance of counsel claims. "[I]n a federal habeas challenge to a state criminal judgment, a state court conclusion that counsel rendered effective assistance is not a finding of fact binding on the federal court to the extent stated by 28 U.S.C. § 2254(d)." *Strickland v. Washington*, 466 U.S. 668, 698 (1984). "A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction . . . has two components." *Id.* at 687. First, "the [petitioner] must show that counsel's performance was deficient." *Id.* This requires showing that counsel did not provide "reasonably effective assistance." *Id.* "Second, the defendant must show that the deficient performance prejudiced the defense." *Id.* "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial." *Id.*

## II.     Factual Background

The Kansas Supreme Court summarized the facts of petitioner's state-court conviction as follows:

> The State charged [petitioner] and Price with attempted first-degree murder [of Amos Becknell]. Price would eventually enter into a plea agreement with the State, in which he agreed to plead guilty to two counts of aggravated battery and testify against [petitioner].
>
> On the day of trial, the prosecutor informed the district judge that Becknell was present but was unwilling to testify. The district judge, the prosecutor, and [petitioner]'s trial counsel discussed how best to proceed. The district judge indicated that he was willing to bring Becknell into the courtroom outside the presence of the jury in order to "get some direct feedback on the record as to his willingness [to testify]." The prosecutor responded that Becknell was "not comfortable even coming into the courtroom under the circumstances with spectators and taking the witness stand even to state his refusal to testify." The prosecutor suggested conducting the hearing in the judge's law library. [Petitioner]'s trial counsel noted that "[i]t might be easier if we just emptied the courtroom and then did it in here" but ultimately "defer[red] to however the court wishe[d] to do it."
>
> After the judge swore in the members of the jury and the parties' counsel made their opening remarks, the judge excused the jurors and then emptied the courtroom except for counsel, [petitioner], and court personnel. Becknell initially refused to enter the courtroom, but eventually he did so and was sworn in. Becknell informed the judge that he refused to testify and wanted to go home. After a few clarifying questions, the judge determined that Becknell was unavailable as a witness and thus Becknell's preliminary hearing testimony would be read to the jury.
>
> Testimony at trial clearly pointed to [petitioner] as the shooter. Becknell's mother and another witness testified that they saw a blue car pull up to Becknell's home. Both saw the driver exit, approach Becknell, and shoot him. Becknell's mother had been unable to identify [petitioner] from a photo lineup, but she testified at trial that she recognized [petitioner] when she saw him at the preliminary hearing. A third witness testified that [petitioner] had told her that he shot someone, and a fourth witness testified that she had overheard the conversation and that Price had later informed her that [petitioner] shot someone.
>
> When Price testified, he said his plea agreement required him to testify truthfully and that he was, in fact, testifying truthfully. He said that he and [petitioner]

>drove to Becknell's house, and then [petitioner] got out of the driver's seat of the car and walked up to the house. Price lost sight of [petitioner] as he approached the house, but he heard a "loud clap" that "[c]ould have been a gunshot." After Price heard the loud noise, [petitioner] returned to the car and the two left the scene.
>
>Becknell's preliminary hearing testimony, admitted at trial, was consistent overall with the observations of the other witnesses. He said he had been sitting on his front porch when a man approached him from the driver's side of a blue car. After a brief exchange of words, the man shot Becknell. Becknell also was able to identify [petitioner] as the shooter. Becknell said that he knew Price and that it was not Price who shot him.
>
>[Petitioner] testified in his defense. He asserted it was Price who shot Becknell. According to [petitioner], he had agreed to take Price to Becknell's house so that Price could fight Becknell. When [petitioner] approached Becknell's house, Price identified the house and told [petitioner] to drive past and circle back. On the way back toward the house, Price crawled into the back seat. Once at the house, [petitioner] testified, Price exited the driver-side rear door, went up to Becknell outside the house, and shot Becknell before running back to the car.

*Kansas v. Reed*, 352 P.3d 530, 534–35 (Kan. 2015) (hereinafter *Reed II*). The jury convicted petitioner for attempted first degree murder. *Id.* at 534. The Sedgwick County District Court sentenced petitioner to 272 months in prison. Doc. 1. at 1.

Petitioner appealed his conviction through counsel to the Kansas Court of Appeals. He raised the following claims: (1) ineffective assistance of trial counsel; (2) violation of his right to a public trial; (3) prosecutorial misconduct depriving him of his right to a fair trial; and, (4) a sentence that constituted cruel and unusual punishment. *Reed II*, 352 P.3d at 536. The Kansas Court of Appeals affirmed his conviction and sentence. *Kansas v. Reed*, No. 106,807, 2013 WL 451900, at *22 (Kan. Ct. App. Feb. 1, 2013) (hereinafter *Reed I*). On June 19, 2015, the Kansas Supreme Court affirmed petitioner's conviction, but remanded his case for resentencing. *Reed II*, 352 P.3d at 549. On October 13, 2015, the United States Supreme Court denied his petition for certiorari. Doc. 1 at 3; *Reed v. Kansas*, 136 S. Ct. 344, 344 (2015). One year later, petitioner filed this 28 U.S.C. § 2254 petition in our court. Doc. 1.

4

### III. Analysis

Petitioner's § 2254 petition asserts four distinct grounds for relief. His first claim theorizes that the trial judge violated his Sixth Amendment right to a public trial and Fourteenth Amendment due process rights when he closed the courtroom to inquire, on the record, whether Mr. Becknell was available to testify. Doc. 1 at 4. Petitioner's remaining claims assert that his Sixth Amendment rights were violated due to ineffective assistance of counsel. Doc. 1 at 6–9. The court addresses petitioner's first claim in Part A and petitioner's remaining claims in Part B, below.

#### A. Ground One: Right to Public Trial

Both the Kansas Court of Appeals and the Kansas Supreme Court considered petitioner's claim that the trial judge violated his right to a public trial. *See Reed II*, 352 P.3d at 540; *Reed I*, 2013 WL 451900, at *22. And both appellate courts rejected his claim on the merits. *Id.* So, for petitioner to deserve relief on ground one, he must demonstrate: (1) the adjudication of the claim resulted in a decision that was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or, (2) the adjudication of the claim resulted in a decision "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Using this standard, the court turns to petitioner's first claim for relief.

In Ground One, petitioner asserts that the trial judge violated his Sixth Amendment public trial right and Fourteenth Amendment due process rights by closing the courtroom for Mr. Becknell's inquiry. The Sixth Amendment, which applies to the states through the Due Process Clause of the Fourteenth Amendment, guarantees every criminal defendant a "speedy and public trial." Const. amend.VI; *see also Presley v. Georgia*, 558 U.S. 209, 211–12 (2010). In our

judicial system, the public trial guarantee safeguards the defendant "from potentially perjurious or abusive testimony." *Davis v. Reynolds*, 890 F.2d 1105, 1109 (10th Cir. 1989). But this guarantee is not an absolute one. Indeed, the "'right to an open trial may give way in certain cases to other rights or interests, such as the defendant's right to a fair trial or the government's interest in inhibiting disclosure of sensitive information.'" *Presley*, 558 U.S. at 213 (2010) (quoting *Waller v. Georgia*, 467 U.S. 39, 45 (1984)). And, federal courts have not extended the Sixth Amendment public trial protection to every proceeding. *See, e.g.*, *United States v. Norris*, 780 F.2d 1207, 1211 (5th Cir. 1986) (holding that the Sixth Amendment public trial right did not extend to private conferences in chambers or at the bench because they were "non-public exchanges between counsel and the court" on technical legal issues).

The Kansas Supreme Court weighed public trial opinions from several federal courts before concluding that the Sixth Amendment public trial right did not extend the trial judge's inquiry with Mr. Becknell. First, the Kansas Supreme Court consulted the Supreme Court's decision in *Press-Enterprise Co. v. Superior Court*.[1] In *Press Enterprise*, the Supreme Court adopted an "experience and logic" test to determine whether the First Amendment requires public access to preliminary hearing testimony. *Press Enterprise*, 478 U.S. at 7–8. This test has two prongs. First, the Supreme Court considered whether preliminary hearings had "historically been open to the press and general public." *Id.* at 8. The Supreme Court recognized that certain processes, like the selection of jurors, have "presumptively been a public process with exceptions only for good cause shown." *Id.* Second, the Supreme Court considered whether public access plays a significant positive role in the functioning of the particular process in question." *Id.* Applying the "experience and logic" test, the Supreme Court concluded that the First Amendment right of access to criminal proceedings applies to preliminary hearings. *Id.* at 13.

---

[1] 478 U.S. 1 (1986).

6

The Kansas Supreme Court also considered an opinion from the Ninth Circuit.  In *United States v. Waters*,[2] the Ninth Circuit analyzed the "values served by a public trial."  *Waters*, 627 F.3d at 360.  They are:  (1) ensuring a fair trial; (2) reminding the prosecutor and judge about their responsibility to the accused; (3) encouraging witnesses to come forward; and, (4) discouraging perjury.  *Id.*  These values, the Circuit determined, favored extending the public trial right to preliminary hearings.  *Id.*

Next, the Kansas Supreme Court considered a Fifth Circuit opinion.  In *Norris*, the Fifth Circuit held that in-chambers exchanges between counsel and the court on purely technical, legal issues did not violate the defendant's public trial right.  *Norris*, 780 F.2d at 1210.

Finally, the Kansas Supreme Court examined an opinion from the First Circuit, *United States v. Vazquez-Botet*.[3]  There, the First Circuit held that the district court's closed "question-and-answer" offer of proof hearing, used to create a record for the appellate court on a relevancy ruling, did not violate the defendant's right to a public trial.  *Vazquez-Botet*, 532 F.3d at 51–52.

Using these standards, the Kansas Supreme Court concluded that petitioner's Sixth Amendment public trial right did not apply to the court's inquiry about Mr. Becknell's availability to testify.  *Reed II*, 352 P.3d at 542.  The court held that "the inquiry into whether [Mr.] Becknell would testify in the face of contempt of court" was "distinct from trial proceedings," even though it was conducted in the courtroom.  *Reed II*, 352 P.3d at 542.  The Kansas Supreme Court concluded that the inquiry was a "collateral matter concerning a question of law," more nearly like a sidebar conference than actual trial proceedings.  *Id.*  In so concluding, the Kansas Supreme Court determined that the trial judge had not violated petitioner's Sixth Amendment rights.  *Id.*

---

[2]   627 F.3d 354 (9th Cir. 2010).

[3]   532 F.3d 37 (1st Cir. 2008).

In his Traverse, petitioner asserts that the timing of the closed courtroom "struck at the foundational purposes of the constitutional public trial right guarantee." Doc. 20 at 9. According to petitioner, the judge closed the courtroom after the jury was sworn and counsel had made their opening remarks. *Id.* But swearing the jury is not the hallmark of the public trial right. Indeed, the Supreme Court has not articulated a specific test for determining when the Sixth Amendment right to a public trial attaches. Instead, the Supreme Court has identified the central aim of the public trial right: to ensure a fair trial. *Waller*, 467 U.S. at 46. Generally, this includes (1) keeping triers aware of their responsibility; (2) encouraging witnesses to come forward; and (3) discouraging perjury. *Id.* The Kansas Supreme Court's close analysis of the federal law on this subject makes it clear that the trial judge did not threaten these aims when it closed Mr. Becknell's inquiry.

None of the authority petitioner submits in his Traverse and Supplement to Traverse alters this conclusion. In his Supplement to Traverse, petitioner asserts that in two cases—*Davis v. Reynolds* and *United States v. Iribe- Perez*[4]— the Tenth Circuit has interpreted and applied the Sixth Amendment public trial right to support the outcome he urges here. This is incorrect. While both opinions discuss the importance of the public trial right, neither applies the right to the type of limited inquiry at issue here.

The Kansas Supreme Court's decision was based on a reasonable determination of the facts in light of the evidence. Whether Mr. Becknell was available to testify was a question of law. *See Kansas v. Sanders*, 904 P.2d 951, 958 (Kan. 1995) *superseded by statute as stated in Kansas v. Albright*, 24 P.3d 103 (Kan. 2001) ("When the unavailability of a witness becomes an issue, whether the witness is unavailable is a question of law."); *see also Norris*, 780 F.2d at 1210 (finding that the "concerns expressed by *Waller* underlying the right to a public trial" were

---

[4] 890 F.2d 1106 (1989); 129 F.3d 1167 (1997).

not implicated by non-public exchanges between the court and counsel on "technical legal issues and routine administrative problems"). The Kansas Supreme Court analogized the inquiry to a conference at sidebar, which, in its logic and experience, typically is not open to the public and, indeed, its purpose would be frustrated if it were. And, closing the courtroom did not discourage witnesses from coming forward. Mr. Becknell initially was unwilling to enter the courtroom in front of the jury and spectators, and he agreed to appear only after the courtroom was closed. Opening this preliminary inquiry to the public likely would have discouraged Mr. Becknell from providing the foundation that the trial court needed to decide a threshold issue.

In sum, petitioner has not demonstrated that the Kansas Supreme Court's decision finding no violation of petitioner's public trial right claim was contrary to, or involved an unreasonable application of, clearly established federal law. And petitioner has not demonstrated that the decision was based on an unreasonable determination of the facts in light of the evidence. This ground thus provides no basis for habeas relief.

### B. Grounds Two–Four: Ineffective Assistance of Counsel

Petitioner's remaining grounds for relief assert that his trial counsel, Quentin Pittman, provided ineffective assistance of counsel. Petitioner's claims are based on three separate occasions that he believes Mr. Pittman performed below an objective standard of reasonableness. Before petitioner is entitled to habeas relief on this ground, first he must show that Mr. Pittman did not provide "reasonably effective assistance." *Strickland*, 466 U.S. at 687. Then, petitioner must show that the deficient performance prejudiced him. *Id.*

#### 1. Failure to Object to Finding that Mr. Becknell was Unavailable

First, petitioner asserts that his Sixth Amendment right to effective assistance of counsel was violated because Mr. Pittman did not object to the trial judge's finding that Mr. Becknell

9

was unavailable.  Petitioner contends Mr. Pittman's performance fell below an objective standard of reasonableness because he did not object when the trial judge determined that Mr. Becknell was unavailable without first ordering him to testify or holding him in contempt.  In other words, petitioner makes two arguments.  First, that the trial judge did not follow proper procedural principles.  Second, that Mr. Pittman acted unreasonably when he did not object to the judge's mistake.

Petitioner supports his first argument with a Second Circuit opinion.  In *United States v. Zappola*[5] the Second Circuit held that the trial judge failed to follow proper procedure before declaring that an informant unavailable to testify under Federal Rule of Civil Procedure 804(a)(2).  646 F.2d at 54.  The Second Circuit's precedent had established the following procedure before determining that a witness is unavailable to testify:  (1) the judge must issue an order, outside the presence of the jury, directing the informant to testify; and, (2) warn the informant that the continued refusal to testify despite the court's order could be punishable by contempt.  *Id.*  But, petitioner does not cite, and the court does not find, Kansas precedent establishing the same.

The applicable Kansas statute defines "unavailable as a witness" as situations where the witness is exempted from testifying, disqualified from testifying, unable to be present to testify because of death or illness, or absent beyond the jurisdiction of the court.  Kan. Stat. Ann. § 60-459(g).  It does not require the judge to order the witness to testify before declaring that he or she is unavailable.  So, petitioner urges the court to consider the federal counterpart to this rule, Federal Rule of Evidence 804.  This rule provides that a declarant is unavailable as a witness if the declarant "refuses to testify about the subject matter despite a court order to do so."  Fed. R.

---

[5]   646 F.2d 48 (2d. Cir.1981).

Evid. 804(a)(2). Petitioner also cites a Tenth Circuit case for relief on this ground— *United States v. Rothbart*.[6] But the Tenth Circuit's decision in *Rothbart* did not hold that a trial judge must issue an order before determining that a witness is unavailable. *See Rothbart*, 653 F.2d at 466 (holding that the government violated the defendant's confrontation right when it failed to make a good faith effort to obtain the witness's presence at trial).

Indeed, the Tenth Circuit has held the opposite. In *Jennings v. Maynard*,[7] the Tenth Circuit held that the trial judge was not required to order a witness to testify before finding that witness unavailable for confrontation clause purposes when, during the *in camera* hearing, the witness testified that he would not obey a court order requiring him to testify. *Jennings*, 946 F.2d at 1505. The facts are similar here. During the inquiry, the trial judge questioned Mr. Becknell about his willingness to testify, and when he refused, the trial judge informed Mr. Becknell that he could be subject to sanctions. Jury Trial Transcript at 25–27, *Kansas v. Reed*, No. 10 CR 2939 (Sedgwick Cty. Dist. Ct. Mar. 15, 2011). Still, Mr. Becknell refused to testify. Doc. 11 at 17; *Id.* Under *Jennings*, the trial judge did not violate procedure when he failed to issue an order requiring Mr. Becknell to testify. And, petitioner does not cite, and the court has not found, any Kansas caselaw interpreting Kan. State. Ann. § 60-459 to require a court order before declaring the witness unavailable.

Also, Mr. Pittman's performance did not fall below an objective standard of reasonableness when he failed to object to the judge's determination. "In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances." *Strickland*, 466 U.S. at 688. This standard is "highly deferential." *Id.* In other words, "the general presumption of objective reasonableness

---

[6]   653 F.2d 462 (10th Cir. 1981).

[7]   946 F.2d 1502, 1505 (10th Cir. 1991).

11

requires a petitioner to overcome the presumption that, under all the circumstances, the challenged action might be considered sound trial strategy." *Bullock v. Carver*, 297 F.3d 1036, 1046 (10th Cir. 2002) (quoting *Strickland*, 466 U.S. at 689 (internal quotation marks omitted)). "Strategic or tactical decisions on the part of counsel are presumed correct, unless they were 'completely unreasonable, not merely wrong, so that [they] bear no relationship to a possible defense strategy.'" *Moore v. Marr*, 254 F.3d 1235, 1239 (10th Cir. 2001) (quoting *Fox v. Ward*, 200 F.3d 1286, 1296 (10th Cir. 2000)).

Mr. Pittman asserts that his decision not to object was strategic. In his affidavit submitted during the state court proceedings, Mr. Pittman asserted that he sought a preliminary hearing on petitioner's behalf because he wanted to watch Mr. Becknell testify "in an attempt to gauge his credibility." Pittman Aff. at 2, *Kansas v. Reed*, No. 10 CR 2939 (Sedgwick Cty. Dist. Ct. Sept. 13, 2011). After the preliminary hearing, Mr. Pittman contends "certain things were obvious: (1) [Mr.] Becknell was certain [petitioner] had shot him [. . .] and (2) [Mr.] Becknell was terrified of [petitioner.]" *Id.* Mr. Pittman quickly concluded that Mr. Becknell's presence at trial would disadvantage petitioner, not help him. Then, when Mr. Becknell refused to testify at trial, Mr. Pittman believed this outcome would help petitioner's defense. *Id.* Mr. Pittman believed that admitting Mr. Becknell's testimony through the preliminary hearing transcript would keep the jury from seeing "[Mr.] Becknell's fear of [petitioner] and unequivocal belief that" petitioner shot him." *Id.* Considering all the circumstances, Mr. Pittman's strategy was not objectively unreasonable.

And, even if Mr. Pittman's failure to object was unreasonable, petitioner has failed to show that Mr. Pittman's decision prejudiced him. Petitioner asserts that "but for trial Counsel's deficient performance, Petitioner would have been acquitted." Doc. 20 at 15. But "[i]t is not

12

enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693. "Virtually every act or omission of counsel would meet that test." *Id.* The defendant must show that "there is a reasonable probability that, but for" the errors, "the result of the proceeding would have been different." *Id.* Here, petitioner has failed to demonstrate a reasonable probability that if Mr. Pittman had objected to Mr. Becknell's unavailability, the trial would have had a different outcome. Indeed, if Mr. Pittman had objected and the court had sustained that objection, it is reasonable to believe that Mr. Becknell's testimony would have been more damaging to petitioner's defense than the transcripts.

In sum, petitioner fails to show that Mr. Pittman's assistance was deficient, or that his alleged deficiency cost him a fair trial. This ground thus provides no basis for relief.

### 2. Waiver of Confrontation Right

Petitioner next alleges that his Sixth Amendment right to effective assistance of counsel was violated because Mr. Pittman waived his Sixth Amendment confrontation right. "The Sixth Amendment's Confrontation Clause provides that, '[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him.'" *Crawford v. Washington*, 541 U.S. 36, 42 (2004) (quoting Const. amend IV.). The Supreme Court has held that admitting testimonial statements from a witness who does not appear at trial violates a defendant's confrontation right unless: (1) the witness is unavailable to testify; and, (2) the defendant had a prior opportunity to cross-examine the witness. *Id.* at 56. Petitioner claims that his counsel failed to object when the trial judge admitted Mr. Becknell's preliminary hearing testimony and so waived his confrontation right.

13

Petitioner relies on dicta from *United States v. Lopez-Medina*[8] and *Davis v. Alaska*[9] to support his position. In *Lopez-Medina*, the Tenth Circuit observed in a footnote that "if counsel's decision to waive his client's confrontation right was made over the client's dissent or was not a legitimate trial tactic, the client might have a viable claim of ineffective assistance of counsel." *Id.* at 731 n.8. And in *Davis*, the Supreme Court reversed the petitioner's conviction, finding that the trial court's protective order violated his Sixth Amendment confrontation right. 415 U.S. at 315. The protective order at issue had prohibited the petitioner from inquiring about a key witness's juvenile court probation, which the Supreme Court held, might have affected the jury's determination about the witness's creditability. *Id.* at 317.

But here, petitioner has adduced no evidence that his counsel waived his confrontation right—or even that his right was implicated. In place of Mr. Becknell's live testimony, the trial judge admitted transcripts from Mr. Becknell's testimony at the preliminary hearing. And, petitioner had had an opportunity to cross-examine Mr. Becknell at the preliminary hearing without any preliminary order limiting his inquiry as in *Davis*. Jury Trial Transcript at 19–21, *Kansas v. Reed*, No. 10 CR 2939 (Sedgwick Cty. Dist. Ct. Mar. 16, 2011). Mr. Pittman's failure to object to the transcript testimony neither implicated nor waived petitioner's Sixth Amendment confrontation right.

Additionally, Mr. Pittman's decision not to object to the preliminary hearing testimony did not deviate from the objective standard of reasonableness. As discussed in Part III.B.1. *supra*, Mr. Pittman contends that his decision not to object was based on his belief that Mr. Becknell's transcript testimony would be less prejudicial to petitioner than live testimony. Mr. Pittman's reasoning was a reasonable assessment by trial counsel. And, even if it were not,

---

[8]   596 F.3d 716 (10th Cir. 2010).

[9]   415 U.S. 308 (1974).

14

petitioner has failed to establish that Mr. Pittman's decision prejudiced him. This ground thus provides no basis for relief.

### 3. Failing to Object to Alleged Prosecutorial Misconduct

Finally, petitioner asserts that his Sixth Amendment right to effective assistance of counsel was violated when Mr. Pittman failed to object to the prosecutor's improper vouching during Mr. Price's testimony. Again, petitioner raises two issues. First, petitioner argues that the prosecutor improperly bolstered Mr. Price's credibility; and, second, petitioner asserts that Mr. Pittman acted below an objective standard of reasonableness when he did not object.

"Generally, prosecutors cannot offer juries their personal opinions on the credibility of witnesses." *Kansas v. Peppers*, 276 P.3d 148, 162 (Kan. 2012) (internal quotation marks omitted). Kansas courts prohibit these comments because they amount to "unsworn, unchecked testimony." *Id.* But, "mere reference to the terms of a witness' plea agreement does not constitute misconduct." *Id.*

Petitioner asserts that the prosecutor violated this rule when he asked Mr. Price about his plea bargain at the start of his testimony. Petitioner complains about the following exchange:

> Q. You have not plead[ed] guilty yet?
>
> A. No I have not.
>
> Q. But it is your understanding that the state has left that plea agreement open and available to you?
>
> A. Yes.
>
> Q. And what *is* your understanding as far as your responsibility goes in regards to the plea agreement?
>
> A. Well, from what I found out today, if I don't testify, the plea get pulled, I do 25.

> Q. Well Mr. Price, I'm asking you what the plea agreement says and I'm asking you to look at paragraph D.
>
> A. It says the state recommends to give me—to recommend
>
> Q. I'm talking about your part of the responsibility.
>
> A. Well, got to testify.
>
> Q. And how—do you have to testify truthfully?
>
> A. Yes, it says truthfully as I'm sworn in.
>
> Q. And is that why you're testifying today to testify truthfully, Mr. Price?
>
> A. Yes.

Jury Trial Transcript at 39–40, *Kansas v. Reed*, No. 10 CR 2939 (Sedgwick Cty. Dist. Ct. Mar. 16, 2011). This exchange does not amount to improper bolstering or commenting on the witness' credibility. Rather, the prosecutor limited his questioning to whether Mr. Price's plea agreement contained an obligation to testify truthfully. He did not reveal anything about the witness's proclivity to testify truthfully other than the language and obligations from the plea agreement. Thus, the prosecutor did not improperly comment on Mr. Price's credibility.

Because the prosecutor did not bolster Mr. Price's testimony improperly, Mr. Pittman did not fall below the objective standard of reasonableness when he did not object to the prosecutor's questioning. And Mr. Pittman's decision not to object did not prejudice petitioner. Ground four thus provides no basis for relief.

### IV.   Conclusion

For reasons explained above, petitioner has not demonstrated that the Kansas Supreme Court's decision was based on an unreasonable application of clearly established federal law, or that the adjudication of the claim resulted in an unreasonable decision in light of the evidence.

And, petitioner has not demonstrated that Mr. Pittman's assistance fell below an objective standard of reasonableness, or in any way prejudiced his right to a fair trial.

**IT IS THEREFORE ORDERED BY THE COURT THAT** petitioner Samuel L. Reed's petition for writ of habeas corpus (Doc. 1) is denied.

**IT IS SO ORDERED.**

**Dated this 14th day of July, 2017, at Topeka, Kansas.**

        **s/ Daniel D. Crabtree**
        **Daniel D. Crabtree**
        **United States District Judge**